**No. 25-11044**

---

# In The
# United States Court of Appeals for the Fifth Circuit

---

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee,*

v.

TIMOTHY BARTON,
*Defendant-Appellant,*

---

On Appeal from the United States District Court for the Northern District of Texas, Dallas Division Civil Action No. 3:22-cv-2118-X
Hon. Brantley Starr, United States District Judge

---

**APPELLANT'S OPENING BRIEF**

---

Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

## CERTIFICATE OF INTERESTED PERSONS

## NO. 25-11044

SECURITIES AND EXCHANGE COMMISSION
*Plaintiff-Appellee,*
*v.*
*TIMOTHY BARTON,*
*Defendant-Appellant*

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. 126 Villita LLC, receivership entity
2. 2999 Acquisitions, LLC (Delaware), entity subject to preliminary injunction
3. 2999 Middlebury, LLC (Delaware), entity subject to preliminary injunction
4. 2999 Roxbury, LLC (Delaware), entity subject to preliminary injunction
5. 2999TC Acquisitions, LLC, receivership entity

6. 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC, entity subject to preliminary injunction
7. 2999TC Founders, LLC (Delaware), entity subject to preliminary injunction
8. 2999TC JMJ CMGR, LLC (Delaware), receivership entity
9. 2999TC JMJ Equity, LLC, entity subject to preliminary injunction
10. 2999TC JMJ MGR, LLC (Delaware), entity subject to preliminary injunction
11. 2999TC JMJ, LLC (Delaware), entity subject to preliminary injunction
12. 2999TC JMJ, LLC (Texas), entity subject to preliminary injunction
13. 2999TC LP, LLC (Delaware), entity subject to preliminary injunction
14. 2999TC MM, LLC, entity subject to preliminary injunction
15. 2999TC MZ, LLC (Delaware), entity subject to preliminary injunction
16. 3820 Illinois, LLC, interested party

17. Ackerman LLP, counsel for interested parties DLP Real Estate Capital, Inc, DLP Winter Haven Ventures, LLC, Marine Creek Ventures, LLC, and Orchard Farms Ventures, LLC
18. Adam and Reese LLP, counsel for interested party Bank of America, N.A.
19. Aledo TX, LLC, receivership entity
20. AVEG WW, LLC (Delaware), entity subject to preliminary injunction
21. AVG West, LLC, receivership entity
22. Badgley, Serena, interested party
23. Bank of America, N.A., interested party
24. Barton, Maximilien, interested party
25. Barton, Timothy, defendant-appellant
26. Barton Texas Water District, LLC, entity subject to preliminary injunction
27. Barton Water District, LLC (Delaware), entity subject to preliminary injunction
28. Baum, Nathan B., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership

entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

29. BEE2019, LLC, receivership entity

30. Berger, Jeffrey A., counsel for plaintiff-appellee Securities and Exchange Commission

31. Bernstein, Keefe M., counsel for plaintiff-appellee Securities and Exchange Commission

32. BC Acquisitions, LLC (Delaware), entity subject to preliminary injunction

33. Bird, Douglas S., counsel for interested party City of Frisco, Texas

34. BM318 LLC, receivership entity

35. Broadview Holdings Trust, receivership entity

36. Brown Fox PLLC, counsel for receiver Cortney C. Thomas

37. BSJ Trading, LLC, entity subject to preliminary injunction

38. Buchholz, Robert W., counsel for interested party Southern Star Capital, LLC

39. BUILD VIOLET, LLC, entity subject to preliminary injunction

40. Butler Snow LLP, counsel for interested party Louisiana National Bank

41. Cain & Skarnulis PLLC, counsel for interested party Serena Badgley

42. Capps, Aaron T., counsel for interested party Circle H Contractors LP

43. Capps and Associates PLLC, counsel for interested party Circle H Contractors LP

44. Carnegie Development, LLC, defendant and receivership entity

45. Carnegie Finance, LLC, entity subject to preliminary injunction

46. Carrillo, C. Alan, counsel for receiver Cortney C. Thomas

47. Chandler & Shavin PLLC, counsel for interested party Dhiraj Ramolia

48. Chandler Law PC, counsel for interested party Dhiraj Ramolia

49. Chandler, Corinna P., counsel for interested party Dhiraj Ramolia

50. Chapple, Ryan E., counsel for interested party Serena Badgley

51. Cheves, P. Kyle, counsel for interested party McCormick 101, LLC

52. Circle H Contractors LP, interested party

53. City of Frisco, Texas, interested party

54. Clem, David M., counsel for interested party Truist Bank
55. Condo Towers GP, LLC, entity subject to preliminary injunction
56. Cooke, Chris, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
57. Crow, Daniel, interested party
58. Curran, Thomas J., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC
59. CYNKFP, LLC, entity subject to preliminary injunction
60. D4AT, LLC, entity subject to preliminary injunction
61. D4AVEG, LLC, entity subject to preliminary injunction
62. D4BM, LLC, entity subject to preliminary injunction
63. D4BR, LLC (Texas), entity subject to preliminary injunction
64. D4DS LLC, receivership entity
65. D4FR LLC, receivership entity
66. D4IN, LLC (Texas), receivership entity
67. D4KL LLC, receivership entity
68. D4MC, LLC (Texas), receivership entity

69. D4OP, LLC, receivership entity
70. D4OPM, LLC, entity subject to preliminary injunction
71. D4SMC, LLC, entity subject to preliminary injunction
72. D4WP, LLC, entity subject to preliminary injunction
73. Dallas Real Estate Investors, LLC, entity subject to preliminary injunction
74. Dallas Real Estate Lenders, LLC (Delaware), entity subject to preliminary injunction
75. Dallas Real Estate Management, LLC, entity subject to preliminary injunction
76. Dentons US LLP, counsel for interested party McCormick 101, LLC
77. DeYoung, Kyle M., counsel for interested party HNGH Turtle Creek, LLC
78. DJD Land Partners, LLC, relief defendant and receivership entity
79. DLP Real Estate Capital, Inc., interested party
80. DLP Winter Haven Ventures, LLC, interested party

81. Edney, Michael J., counsel for defendant-appellant Timothy Barton
82. Enoch Investments LLC, receivership entity
83. FHC Acquisition LLC, receivership entity
84. Finnell, Jeffrey B., counsel for plaintiff-appellee Securities and Exchange Commission
85. First Development Company of Ohio, LLC, interested party
86. Five Star GM, LLC (Delaware), entity subject to preliminary injunction
87. Five Star MM, LLC (Delaware), entity subject to preliminary injunction
88. Five Star MM, LLC (Texas), entity subject to preliminary injunction
89. Five Star TC, LLC (Delaware), entity subject to preliminary injunction
90. Food & Leverage Real Estate, LLC (Delaware), entity subject to preliminary injunction
91. Fu, Haoqiang, defendant

92. Fullington, Ian E., counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC
93. Gillespie Villas LLC, receivership entity
94. Gitlin, Jonathan, counsel for interested party First Development Company of Ohio
95. Glenwood (18340) Property, LLC (Delaware), entity subject to preliminary injunction
96. Goldmark Hospitality LLC, receivership entity
97. Green, Gordon W., counsel for interested party Truist Bank
98. Hale, Hon. Harlin, mediator
99. Hamilton, Dennis S., counsel for interested party McCormick 101, LLC
100. Heiskell, Michael P., counsel for defendant Stephen T. Wall
101. Hicks, Jr., George W., counsel for counsel for interested party HNGH Turtle Creek, LLC
102. Hill, Ezekiel L., counsel for plaintiff-appellee Securities and Exchange Commission
103. HNGH Turtle Creek, LLC, interested party
104. Hopper, James F., counsel for receiver Cortney C. Thomas

105. HR Sterling, LLC, receivership entity

106. Hunter, Renee M., counsel for intervenor United States of America

107. Hunton Andrews Kurth LLP, counsel for defendant-appellant Timothy Barton

108. Illuminate Dallas, LLC (Texas), entity subject to preliminary injunction

109. JB Special Asset, LLC, entity subject to preliminary injunction

110. JMJ Acquisitions LLC, receivership entity

111. JMJ Acquisitions Mgmt, LLC, entity subject to preliminary injunction

112. JMJ Aviation, LLC (Texas), entity subject to preliminary injunction

113. JMJ BLUES TX, LLC, entity subject to preliminary injunction

114. JMJ Blues, LLC, entity subject to preliminary injunction

115. JMJ Centre, LLC, entity subject to preliminary injunction

116. JMJ Development Brasil, LTDA, entity subject to preliminary injunction

117. JMJ Development Fund, entity subject to preliminary injunction

118. JMJ Development Fund, Inc, entity subject to preliminary injunction
119. JMJ Development LLC, receivership entity
120. JMJ EB5 Fund GP, LLC (Delaware), entity subject to preliminary injunction
121. JMJ EB5 Fund, LP (Delaware), entity subject to preliminary injunction
122. JMJ Holdings, LLC, entity subject to preliminary injunction
123. JMJ Holdings US, LLC, entity subject to preliminary injunction
124. JMJ Holdings USA, Inc, entity subject to preliminary injunction
125. JMJ Home Building Inc (Nevada), entity subject to preliminary injunction
126. JMJ Hospitality General Trading FZE, entity subject to preliminary injunction
127. JMJ Hospitality, LLC, receivership entity
128. JMJ Hospitality UAE, entity subject to preliminary injunction
129. JMJ Investments Limited, entity subject to preliminary injunction

130. JMJ Land Acquisition, Inc (Nevada), entity subject to preliminary injunction

131. JMJ Land Development, Inc (Nevada), entity subject to preliminary injunction

132. JMJ Land Venture, LLC, entity subject to preliminary injunction

133. JMJ Mezzanine, Inc (Nevada), entity subject to preliminary injunction

134. JMJ MF Development, LLC, entity subject to preliminary injunction

135. JMJ Multifamily, Inc (Nevada), entity subject to preliminary injunction

136. JMJ Offshore, LTD, entity subject to preliminary injunction

137. JMJ Regional Center, LLC (Delaware), entity subject to preliminary injunction

138. JMJ Residential, LLC, entity subject to preliminary injunction

139. JMJ Valley Center, LLC, entity subject to preliminary injunction

140. JMJ VC Management, LLC, receivership entity

141. JMJAV, LLC, receivership entity

142. JMJ148, LLC (Texas), entity subject to preliminary injunction

143. JMJD4, LLC, entity subject to preliminary injunction

144. JMJD4, LLC (Delaware), receivership entity

145. JMJD4Allensville, LLC, entity subject to preliminary injunction

146. JMJDWG, LLC (Texas), entity subject to preliminary injunction

147. JMJKH, LLC, entity subject to preliminary injunction

148. JMR100 LLC, receivership entity

149. Johnson Vaughn & Heiskell, counsel for defendant Stephen T. Wall

150. Johnston, Kenneth C., counsel for interested party Truist Bank

151. Johnston Clem Giffod PLLC, counsel for interested party Truist Bank

152. Kane Russell Coleman & Logan PC, counsel for interested party HNGH Turtle Creek, LLC

153. Kane, John J., counsel for interested party HNGH Turtle Creek, LLC

154. Kearns, David T., counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

155. Kirkland & Ellis LLP, counsel for interested party HNGH Turtle Creek, LLC
156. Kleinsasser, Matthias, counsel for interested party Vertical Street Ventures, LLC
157. Koonce, Charlene C., counsel for receiver Cortney C. Thomas
158. LaJolla Construction Management LLC, receivership entity
159. LC Aledo TX, LLC, receivership entity
160. LDG001, LLC, relief defendant and receivership entity
161. Lesser, Joshua A., counsel for interested party Bank of America, N.A.
162. Light, Barbara, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
163. Louisiana National Bank, interested party
164. Lumar Land & Cattle, LLC, interested party
165. Lynco Ventures, LLC, receivership entity
166. Lynn Investments, LLC, entity subject to preliminary injunction

167. Mansion Apartment Homes at Marine Creek, LLC, receivership entity
168. Marine Creek SP, LLC, receivership entity
169. Marine Creek Ventures, LLC, interested party
170. McCormick 101, LLC, interested party
171. MCFW, LLC, entity subject to preliminary injunction
172. MCRS2019, LLC (Texas), entity subject to preliminary injunction
173. MF Container, LLC (Delaware), entity subject to preliminary injunction
174. MFO Venus Development, LLC, interested party
175. Middlebury Trust, entity subject to preliminary injunction
176. MMCYN, LLC, entity subject to preliminary injunction
177. MO 2999TC, LLC, receivership entity
178. Moeller, Evan A., counsel for interested party Bank of America, N.A.
179. Moss & Associates, LLC, interested party
180. Munsch Hardt Kopf & Harr, P.C., counsel for interested party The Dixon Water Foundation
181. MV9490 Land Lot, LLC, entity subject to preliminary injunction

182. MV9490 Management, LLC, entity subject to preliminary injunction

183. MV9490, LLC, entity subject to preliminary injunction

184. MXBA, LLC, entity subject to preliminary injunction

185. MXBA Managed, LLC, entity subject to preliminary injunction

186. MXBA Services, LLC, entity subject to preliminary injunction

187. Napoli, Michael D., counsel for interested parties DLP Real Estate Capital, Inc, DLP Winter Haven Ventures, LLC, Marine Creek Ventures, LLC, and Orchard Farms Ventures, LLC

188. Nealy Cox, Erin, counsel for interested party HNGH Turtle Creek, LLC

189. Nicholson, Jill L., counsel for interested party McCormick 101, LLC

190. Norman, Brian K., counsel for interested party Southern Properties Capital, Ltd.

191. Northstar 114, LLC (Delaware), entity subject to preliminary injunction

192. Northstar PM, LLC (Delaware), receivership entity

193. Norton Rose Fulbright US LLP, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC
194. O'Connell, Sean B., counsel for defendant-appellant Timothy Barton
195. One Agent Texas, LLC (Texas), entity subject to preliminary injunction
196. One Agent, LLC (Delaware), entity subject to preliminary injunction
197. ONE FHC, LLC (Texas), entity subject to preliminary injunction
198. One MF Residential, LLC, entity subject to preliminary injunction
199. One MFD4, LLC, entity subject to preliminary injunction
200. One Pass Investments, LLC (Delaware), entity subject to preliminary injunction
201. One RL Trust, entity subject to preliminary injunction
202. One SF Residential, LLC, entity subject to preliminary injunction

203. Orchard Farms Ventures, LLC, interested party

204. Orchard Farms Village LLC, receivership entity

205. Palisades-TC, LLC, interested party

206. Patton, Jonathan R., counsel for interested party Palisades-TC, LLC

207. Peckar & Abramson, counsel for interested parties Moss & Associates, LLC and MFO Venus Development, LLC

208. Perry, Deborah M., counsel for interested party The Dixon Water Foundation

209. Pioneer Finance, Inc., interested party

210. Polsinelli PC, counsel for interested party McCormick 101, LLC

211. Ramer, Samuel, counsel for interested parties Maximilien Barton, MXBA LLC, and TRTX Properties LLC, and receivership entities Gillespie Villas LLC, TC Hall, L.L.C., Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, and Venus59 LLC

212. Ramolia, Dhiraj, interested party

213. Ranis, Ethan J., counsel for interested party City of Frisco, Texas

214. Residential MF Assets, LLC (Delaware), entity subject to preliminary injunction

215. Rhino Stainless US, LLC, entity subject to preliminary injunction

216. Ridgeview Addition, LLC (Texas), receivership entity

217. Riverwalk Invesco, LLC (Delaware), entity subject to preliminary injunction

218. Riverwalk Opportunity Management, LLC (Delaware), entity subject to preliminary injunction

219. Riverwalk OZFM, LLC (Delaware), entity subject to preliminary injunction

220. Riverwalk OZFV, LLC (Delaware), entity subject to preliminary injunction

221. Riverwalk QOZBJ, LLC (Delaware), entity subject to preliminary injunction

222. Riverwalk QOZBM, LLC (Delaware), entity subject to preliminary injunction

223. Riverwalk QOZBV, LLC (Delaware), entity subject to preliminary injunction

224. Roossien, Jr., Dennis L., counsel for interested party The Dixon Water Foundation

225. Ross, Smith & Binford, PC, counsel for interested party First Development Company of Ohio

226. Scott, John B., counsel for interested party Pioneer Finance, Inc.

227. Scott & Scott, PLLC, counsel for interested party Pioneer Finance, Inc.

228. Scheff & Stone, L.L.P., counsel for interested party interested party Texas Republic Bank, N.A.

229. Schurr, Patrick J., counsel for interested party interested party Texas Republic Bank, N.A.

230. Seagoville Farms, LLC, receivership entity

231. Securities and Exchange Commission, plaintiff-appellee

232. SF Rock Creek, LLC, receivership entity

233. Shamoun & Norman, LLP, counsel for interested party Southern Properties Capital, Ltd.

234. Shamoun, C. Gregory, counsel for interested party Southern Properties Capital, Ltd.

235. Shavin, Eliot Dana, counsel for interested party Dhiraj Ramolia

236. SK Carnegie, LLC, entity subject to preliminary injunction

237. Slim, Jules P., counsel for defendant-appellant Timothy Barton

238. Somerset-Lost Creek Golf, Ltd., interested party

239. Southern Properties Capital, Ltd., interested party

240. Southern Star Capital, LLC, interested party

241. Spector & Cox, PLLC, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

242. Spector, Howard Marc, counsel for interested parties Tamamoi, LLC and 3820 Illinois, LLC

243. Starr, Hon. Brantley, U.S. District Court Judge (N.D. Tex.)

244. Sosland, Martin A., counsel for interested party Louisiana National Bank

245. STL Park, LLC (Delaware), entity subject to preliminary injunction

246. Tamamoi, LLC, interested party

247. Tarm Carnegie Management, LLC (Delaware), entity subject to preliminary injunction

248. Tarm Carnegie, LLC (Texas), entity subject to preliminary injunction

249. Taylor, Clay M., counsel for interested party McCormick 101, LLC

250. TC Hall, LLC, receivership entity
251. Texas Republic Bank, N.A., interested party
252. The Dixon Water Foundation, interested party
253. The MXBA Trust, entity subject to preliminary injunction
254. The Timothy L. Barton Irrevocable Life Insurance, entity subject to preliminary injunction
255. The Towers Condominium Partners Ltd, entity subject to preliminary injunction
256. Thomas, Cortney C., receiver
257. Tillotson, Jeffrey M., counsel for interested party Palisades-TC, LLC
258. Tillotson Johnson & Patton, counsel for interested party Palisades-TC, LLC
259. Titan Investments LLC, a/k/a Titan 2022 Investments, LLC, receivership entity
260. TLB 2012 IRR Trust, entity subject to preliminary injunction
261. TLB 2018 Trust, entity subject to preliminary injunction
262. TLB 2019 Trust, entity subject to preliminary injunction
263. TLB 2020 Trust, entity subject to preliminary injunction

264. TRTX Properties LLC, entity subject to preliminary injunction

265. Truist Bank, interested party

266. TRWF LODGE, LLC, entity subject to preliminary injunction

267. TRWF, LLC, entity subject to preliminary injunction

268. United States of America, intervenor

269. Venus59 LLC, receivership entity

270. VenusBK195, LLC (Texas), entity subject to preliminary injunction

271. VenusPark201, LLC (Delaware), entity subject to preliminary injunction

272. Vertical Street Ventures, LLC, interested party

273. Villita Development, LLC, receivership entity

274. Villita Towers LLC, receivership entity

275. Wall, Stephen T., defendant

276. Wall007, LLC, defendant and receivership entity

277. Wall009, LLC, defendant and receivership entity

278. Wall010, LLC, defendant and receivership entity

279. Wall011, LLC, defendant and receivership entity

280. Wall012, LLC, defendant and receivership entity

281. Wall016, LLC, defendant and receivership entity

282. Wall017, LLC, defendant and receivership entity

283. Wall018, LLC, defendant and receivership entity

284. Wall019, LLC, defendant and receivership entity

285. Wells, Tim, counsel for receiver Cortney C. Thomas

286. Wielebinski, Joe, counsel for interested party Vertical Street Ventures, LLC

287. Winstead PC, counsel for interested party Vertical Street Ventures, LLC; and

288. WRL2019, LLC (Texas), receivership entity.

The undersigned counsel certifies that the above list includes all persons, associations of persons, firms, partnerships, or corporations that have a financial interest in the outcome of this appeal as required by Fifth Circuit Rule 28.2.1.

/s/ *Timothy L. Barton*
Timothy L. Barton
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

Date: January 15, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This appeal presents significant questions regarding the proper standards for judicial review of receiver fee applications, including:

1. Whether fees may be approved based on billing records that are 75% to 92% redacted, preventing meaningful review;

2. The proper application of the lodestar test when a receiver has obtained zero results after more than two years and millions in approved fees; and

3. Whether fees incurred during an improperly granted receivership should be shifted to the party that sought the appointment.

These issues affect not only the parties in this case but also the administration of SEC receiverships throughout this Circuit. Oral argument would assist the Court in evaluating the competing interests and establishing clear guidance for district courts reviewing fee applications supported by heavily redacted billing records.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS....................................ii

TABLE OF AUTHORITIES....................................xxix

STATEMENT REGARDING ORAL ARGUMENT....................................xxvi

JURISDICTIONAL STATEMENT....................................1

STATEMENT OF THE ISSUES....................................2

STATEMENT OF THE CASE....................................4

SUMMARY OF THE ARGUMENT....................................8

ARGUMENT....................................12

I. STANDARD OF REVIEW....................................12

II. THE DISTRICT COURT ABUSED ITS DISCRETION BY APPROVING FEES SUPPORTED BY IMPERMISSIBLY REDACTED BILLING RECORDS....................................13

III. THE FEE APPLICATIONS ARE PART OF A SYSTEMATIC PATTERN OF FEE EXTRACTION TIMED TO SETTLEMENT RECEIPTS....................................18

IV. THE DISTRICT COURT ERRED BY APPROVING FEES FOR WORK THAT PRODUCED NO BENEFIT TO THE ESTATE........... 21

V. THE RECEIVER'S FEE APPLICATIONS VIOLATE SEC BILLING INSTRUCTIONS AND FAIL THE LODESTAR TEST...... 26

VI. THE FEES SHOULD BE SHIFTED TO THE SEC AS THE PARTY THAT IMPROPERLY SOUGHT THE RECEIVERSHIP ...... 31

CONCLUSION & RELIEF SOUGHT ..................................................... 35

CERTIFICATE OF COMPLIANCE ....................................................... 37

## TABLE OF AUTHORITIES

### Cases

*Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015)......... 11

*Barrow v. Greenville Independent School District*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005).............................. 28

*Beach v. Macon Grocery Co.*, 125 F. 513, 517 (5th Cir. 1903) ................ 33

*Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000 (8th Cir. 1939) .. 10

*Bramlett v. Medical Protective Co.*, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) ......................................................................... 29

*Corman v. Lifecare Acquisitions Corp.*, 1998 WL 185517, at *2 (N.D. Tex. Apr. 10, 1998) ......................................................................... 29

Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997) ....................... 1

*Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408 (5th Cir. 2022) ..... 9

*Gagnon v. United Technisource*, 607 F.3d 1036 (5th Cir. 2010)............... 9

*Gray v. Fort Worth Independent School District*, No. 4:09-CV-225-Y, 2011 WL 13233588, at *3 (N.D. Tex. July 27, 2011) .......................... 15

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018)........ 27

*Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ...................................... 12

*In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232 (3d Cir. 1970).................... 9

*In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970) .......... 23

*In re K-V Discovery Solutions*, 2011 WL 3876510 (D. Nev. 2011) .......... 17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ............................................................................................ 12

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) .... 12, 26

*Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012) ............................ 4

*Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010) ....................................... 12

*Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. CIV. 4:09-MC-365, 2010 WL 56045, at *8 (S.D. Tex. Jan. 6, 2010) ............ 15

*Porter v. Cooke*, 127 F.2d 853 (5th Cir. 1942) ........................................ 10

*Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *4 (S.D. Tex. July 21, 2021) ........................................... 14

*SEC v. Barton*, 2023 WL 4060191 (5th Cir. 2023) ................................. 10

*SEC v. Barton*, 2023 WL 4060191 (5th Cir. Aug. 31, 2023) ..................... 5

*SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ..................................... 23

*SEC v. Goren*, 272 F. Supp. 2d 202, 210 (E.D.N.Y. 2003) ....................... 27

*SEC v. Small Business Capital Corp.*, 2013 WL 2146606 (N.D. Cal. 2013) ......................................................................................... 23

*SEC v. Torchia*, 2019 WL 1911823 (11th Cir. Apr. 30, 2019) ................ 17

*W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932) ..... 33

**Statutes**

*28 U.S.C. § 1291* ........................................................................................ 1

*28 U.S.C. § 1331* ........................................................................................ 1

*28 U.S.C. § 3103* ........................................................................................ 2

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this SEC enforcement action pursuant to *28 U.S.C. § 1331* and *Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a),* and *Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa.*

This Court has jurisdiction over this appeal pursuant to *28 U.S.C. § 1291*. The District Court entered its Order Granting Receiver's Fifth and Sixth Quarterly Fee Applications on August 4, 2025. ROA. 19350-51. Appellant timely filed his Notice of Appeal on September 9, 2025 ROA. 19375-76.

The Order approving the fee applications is a final, appealable order as it conclusively resolves the fee dispute and orders payment from estate funds that cannot be recovered[1].

[1] *Orders approving receiver fee applications are appealable final orders when they order disbursement of estate funds. See Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997).*

## STATEMENT OF THE ISSUES

**1.** Whether the District Court abused its discretion by approving $594,116.90 in receiver fees where 75.5% to 91.9% of billing entries were redacted, preventing any meaningful judicial review of whether the fees were reasonable, necessary, and commensurate with the work performed.

**2.** Whether the District Court erred by approving fees for sale-related work the Receiver pursued knowing that sales could not close due to pending appeals creating title clouds, constituting waste of estate assets under established Fifth Circuit precedent.

**3.** Whether the District Court erred by approving fees that fail to satisfy the lodestar test and SEC Billing Instructions, where the "results obtained"—the most critical Johnson factor—demonstrate zero net benefit to the estate after more than two years of receivership administration.

**4.** Whether fees incurred during the period when the receivership was vacated by this Court should be shifted to the SEC as the party that improperly sought the appointment, pursuant to *28 U.S.C. § 3103* and Fifth Circuit precedent.

**5.** Whether the District Court erred by approving fee applications that are part of a systematic pattern wherein the Receiver timed fee filings to coincide with settlement receipts, collected $3,720,000 in settlements, and distributed $0.00 to alleged victims while extracting over $2.6 million in professional fees.

## STATEMENT OF THE CASE

### A. Procedural Background

On September 20, 2022, the SEC filed this enforcement action alleging securities fraud against Appellant Timothy Barton and various entities. ROA. 80-108. On October 18, 2022, the District Court appointed Cortney C. Thomas as Receiver over numerous entities. ROA. 660-684. This initial appointment was made without applying the required *Netsphere* factors and without determining which entities were actually connected to the alleged fraud.

On November 16, 2022, the District Court stayed the proceedings on motion from the Department of Justice but explicitly preserved the Receiver's powers to continue all activities. ROA. 1254-55. This created the anomaly of a stayed case with an active receiver billing the estate for investigative work duplicating the SEC's two-year pre-complaint investigation.

On August 31, 2023, this Court vacated the initial receivership order, finding the District Court abused its discretion by failing to apply Netsphere, Inc. v. Baron, 703 F.3d 296 (5th Cir. 2012) standards. *SEC v.*

*Barton, 2023 WL 4060191 (5th Cir. Aug. 31, 2023).* This Court held: "Since a receivership's jurisdiction extends only over property subject to the underlying claims, the district court abused its discretion by including all Barton-controlled entities in the receivership without first determining which were connected to the alleged fraud." *Id. at *4.*

Rather than narrowing the receivership scope as mandated, the District Court reappointed the same Receiver on November 29, 2023, ROA. 14812-39. and subsequently entered a third modified order on June 23, 2025. ROA. 18978-19005. Appellant has appealed the second appointment, currently pending before the Supreme Court Cert Petition *25A465.*

**B. The Fee Applications at Issue**

On July 8, 2025, the Receiver filed his Fifth Quarterly Fee Application seeking $340,857.15 for the period October 1, 2023 through December 31, 2023. ROA. 19045-62. The same day, the Receiver filed his Sixth Quarterly Fee Application seeking $253,259.75 for the period January 1, 2024 through March 31, 2024. ROA. 19133-49.

The combined fees of $594,116.90 were requested as follows:

| Professional | 5th App (Q4 2023) | 6th App (Q1 2024) | Total |
|---|---|---|---|
| Receiver (Cort Thomas) | $42,969.00 | $38,969.50 | $81,938.50 |
| Brown Fox PLLC (Counsel) | $130,355.00 | $143,869.50 | $274,224.50 |
| Ahuja & Clark (Accountants) | $167,533.15 | $70,420.75 | $237,953.90 |
| **TOTAL** | **$340,857.15** | **$253,259.75** | **$594,116.90** |

Appellant filed a Consolidated Objection to both fee applications on August 5, 2025. The SEC filed no objection. On August 4, 2025, the District Court entered a two-page order approving both applications in full, without addressing any of Appellant's objections on the merits. ROA. 19350-51.

**The Pattern of Fee Extraction Without Estate Benefit**

The fee applications at issue represent part of a systematic pattern wherein the Receiver pursues activities that generate substantial fees while producing zero benefit to the receivership estate or the alleged victims. The Receiver's own Fifth Fee Application admits: "the Receiver has been unable to close on the sale of any of the real estate assets that

are part of the Receivership." ROA. 19046. Yet the billing records are dominated by sale-related work.

Across six fee applications, the Receiver and his professionals have been approved for approximately $3 million in fees[2]. The estate has recovered nothing. Not a single dollar has been distributed to any alleged victim. The only beneficiaries of this receivership have been the Receiver and his retained professionals.

The Receiver acknowledges that "the continued delay of the Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually." ROA. 19046. Rather than recognizing that pursuing futile sales creates these costs, the Receiver blames "serial appeals"—which is to say, the Defendant's exercise of his constitutional right to appellate review of an improperly granted receivership and his unnecessary pursuit of sales.

[2] *Total approved fees across six applications: First Application: $444,394.22. ROA 3510-23; Second Application: $349,868.70. ROA 7495-508; Third Application: $427,849.67. ROA 17172-88; Fourth Application: $824,749.03. ROA 17776-94; Fifth Application: $340,857.15. ROA 19045-61; Sixth Application: $253,259.75. ROA 19133-48. Combined total: approximately $2,640,978.52, with additional applications pending.*

## SUMMARY OF THE ARGUMENT

The District Court abused its discretion by approving $594,116.90 in receiver fees without any meaningful review of whether the fees were reasonable. This abuse manifests in six independent grounds, each sufficient for reversal.

**First**, the fee applications are supported by billing records so heavily redacted that judicial review is impossible. Analysis of the submitted invoices reveals that 75.5% to 91.9% of entries are redacted. The Receiver's counsel's "Case Administration" billing is 91.9% redacted; "Asset Analysis" billing is 75.5% redacted. This Court cannot determine what work was performed, whether it was reasonable, whether it was necessary, or whether the time spent was appropriate. The District Court's approval of fees based on these records constitutes clear error.

| Billing Category | Redacted Amount | Redaction % |
|---|---|---|
| Brown Fox - Case Admin (6th) | $21,506 of $23,393 | **91.9%** |
| Receiver - Asset Analysis (6th) | $23,639 of $31,301 | **75.5%** |
| Brown Fox - Case Admin (5th) | $41,302 of $64,282 | **64.3%** |

| | | |
|---|---|---|
| Receiver - Asset Analysis (5th) | $12,435 of $21,254 | **58.5%** |

**Second**, the Receiver billed extensively for work that could not produce any estate benefit. The Receiver pursued property sales—Rock Creek, Frisco Gate, Hall Street, Amerigold Suites—knowing that these sales could not close due to title clouds created by the pending appeal of the receivership order itself. This constitutes waste. Under *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232 (3d Cir. 1970), fees for wasteful activities are not compensable. The Receiver cannot bill the estate for chasing transactions he knew were impossible.

**Third**, the fee applications fail the lodestar test because the "results obtained"—the most critical *Johnson* factor—is zero. After more than two years and approximately $3 million in approved fees, the Receiver has closed no sales, made no distributions to alleged victims, and added no value to the estate. This Court has repeatedly vacated fee awards grossly disproportionate to results. *Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408 (5th Cir. 2022) (vacating fee award 8x the recovery); *Gagnon v. United Technisource*, 607 F.3d 1036 (5th Cir. 2010) (vacating fee award

6x the recovery). Here, the ratio is infinite—millions in fees, zero in results.

**Fourth**, this Court vacated the original receivership order, finding the District Court abused its discretion. *SEC v. Barton*, 2023 WL 4060191 (5th Cir. 2023). When a receivership is improperly granted, longstanding precedent holds that fees should be charged to the party that sought the improper appointment—here, the SE *Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000 (8th Cir. 1939); *Porter v. Cooke*, 127 F.2d 853 (5th Cir. 1942). The fees for the vacated period should be shifted to the SEC, not extracted from the estate.

**Fifth,** the fee applications are full of errors and possibly contain the work that cannot be reviewed due to extensive redactions. The SEC being the vetting agency, has not vetted these fee applications and therefore, if the courts find the bills appropriate, it should be SEC paying the bills and not the receivership estate.

**Sixth,** the fee applications at issue are part of a broader pattern of self-enrichment. The Receiver has collected $3,830,000 in settlements from third parties while distributing nothing to alleged victims. Fee applications have been systematically timed to coincide with settlement

receipts. The Fourth Fee Application, covering Q3 2023 work, was delayed fifteen months until the third HNGH installment of $750,000 was received. This pattern proves that fee extraction—not investor protection—has been the Receiver's primary objective. While all the settlements and sale attempts were initiated under the tag of "emergency" however, the disbursement proves no such emergency on the receivership estate rather an emergent need of the receiver to get paid against the unnecessary work. The pattern continues in a fashion of creating work to get paid and getting paid for that work solely, no necessity, no emergency, no requirement to the receivership estate and zero disbursement or escrow for the alleged co-lenders.

# ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews district court fee awards for abuse of discretion. *Allen v. C&H Distribs., L.L.C.*, 813 F.3d 566, 572 (5th Cir. 2015). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Id.*

While nominally deferential, this standard has substantial bite. This Court "must ensure that attorney fee awards are within a zone of reasonableness." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The district court must provide "a reasonably specific explanation for all aspects of a fee determination." *Perdue v. Kenny A.*, 559 U.S. 542, 558 (2010).

The lodestar method requires consideration of the twelve *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) factors, with "results obtained" being "the most critical factor." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Where plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the

litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

This Court has repeatedly reversed fee awards that fail to account for results. In *Fessler v. Porcelana Corona De Mexico*, 23 F.4th 408 (5th Cir. 2022), this Court vacated a $4.3 million fee award where fees were eight times the amount recovered by the class, finding the district court improperly failed to analyse the award in relation to results obtained. In *Gagnon v. United Technisource*, 607 F.3d 1036 (5th Cir. 2010), this Court vacated a fee award "more than six times greater than the amount of relief awarded."

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY APPROVING FEES SUPPORTED BY IMPERMISSIBLY REDACTED BILLING RECORDS

### A. The Extent of Redaction Renders Judicial Review Impossible

The fee applications at issue are supported by billing records that have been redacted to such an extent that no meaningful judicial review is possible. Appellant's analysis of the submitted invoices demonstrates:

In the Sixth Fee Application, **91.9%** of Brown Fox PLLC's "Case Administration" billing ($21,506 of $23,393) is redacted. **75.5%** of the

Receiver's "Asset Analysis" billing ($23,639 of $31,301) is redacted. **63.4%** of Brown Fox's "Asset Analysis" billing ($69,834 of $110,234) is redacted. ROA. 19136-40.

In the Fifth Fee Application, **64.3%** of Brown Fox PLLC's "Case Administration" billing ($41,302 of $64,282) is redacted. **54.7%** of Brown Fox's "Asset Analysis" billing ($36,092 of $66,011) is redacted. **58.5%** of the Receiver's "Asset Analysis" billing ($12,436 of $21,254) is redacted. ROA 19071-19132.

The redacted entries include descriptions such as:

> "[REDACTED] regarding [REDACTED] and [REDACTED]" — 2.4 hours — $924.00 ROA. 17244.
>
> "Review [REDACTED]; confer with [REDACTED] regarding [REDACTED]" — 1.8 hours — $693.00
>
> "[REDACTED]" — 3.5 hours — $1,347.50  ROA. 17809
>
> "Prepare for and attend [REDACTED]" — 4.2 hours — $1,617.00 ROA. 19105.

These redactions are not surgical excisions of privileged matter. They obliterate the substance of the work performed, making it impossible to determine whether the time was reasonable, whether the work was necessary, or whether it benefited the estate.

### B. Controlling Authority Prohibits Fee Awards Based on Redacted Records

Courts consistently hold that excessive redaction of billing records justifies fee reduction or denial. In *Produce Pay, Inc. v. Amore Produce, LLC*, No. 7:20-CV-00293, 2021 WL 5155715, at *4 (S.D. Tex. July 21, 2021), the court held: "The applicant should maintain billing records in a manner that will enable a reviewing court to identify distinct claims and determine the reasonable number of hours expended on a matter. Redaction of time records defeats these goals." (emphasis added).

In *Gray v. Fort Worth Independent School District*, No. 4:09-CV-225-Y, 2011 WL 13233588, at *3 (N.D. Tex. July 27, 2011), the court found attorney's fees insufficiently documented when time statements included entries such as "Work on memo regarding [redacted text] issue" and "Telephone conference with Kevin Greene regarding [redacted text]." The court reduced fees accordingly.

In *Pillsbury Winthrop Shaw Pittman LLP v. Brown Sims, P.C.*, No. CIV. 4:09-MC-365, 2010 WL 56045, at *8 (S.D. Tex. Jan. 6, 2010), the court stated: "As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole. . . . Plaintiff may not redact, even partially, any entry for which reimbursement is being sought." (emphasis added).

As *Produce Pay* observed, improper redactions "in some cases, has led courts to disallow fees completely." 2021 WL 5155715, at *4.

**C. The Redactions Violate SEC Billing Instructions**

The SEC's official Billing Instructions for Receivers in Civil Actions establish mandatory requirements for fee applications. These Instructions require that time records include "reasonable detail an appropriate narrative description of the services rendered" including "indications of the participants in, as well as the scope, identification and purpose of the activity. "

The redacted entries fail this standard. When 91.9% of "Case Administration" billing is hidden behind redaction markers, there is no

"reasonable detail" or "appropriate narrative description." When entries state only "[REDACTED] regarding [REDACTED]," there is no indication of "scope, identification and purpose."

The SEC Billing Instructions further require that "single entries over one hour" must "include notation of the approximate time for each activity." Many of the Receiver's entries are block-billed for multiple hours with the substantive description entirely redacted, making compliance verification impossible.

### C. Due Process Requires Meaningful Opportunity to Challenge Fees

In *SEC v. Torchia*, 2019 WL 1911823 (11th Cir. Apr. 30, 2019), the Eleventh Circuit held that investors were denied a meaningful day in court when the district court approved receiver actions without proper notice and opportunity to be heard. The court found that investors could not "meaningfully challenge the receiver's methodologies and calculations because he presented no evidence to support his conclusions." *Id.* at *8.

The same due process concern applies here. Appellant cannot meaningfully challenge fees when the substance of the work is hidden.

What was the Receiver doing during the 3.5 hours billed as "[REDACTED]"? What was the purpose of the 4.2 hours spent to "Prepare for and attend [REDACTED]"? Without answers to these questions, objection is impossible and judicial review is a charade.

In *In re K-V Discovery Solutions*, 2011 WL 3876510 (D. Nev. 2011), the court held: "The existence of either confidential or privileged information does not excuse or alter the burden that an attorney must satisfy before a court may award fees." The burden remains on the fee applicant regardless of confidentiality claims.

Here, the District Court approved $594,116.90 without reviewing—because it could not review—what the majority of that money was paying for. This is clear error.

## III. THE FEE APPLICATIONS ARE PART OF A SYSTEMATIC PATTERN OF FEE EXTRACTION TIMED TO SETTLEMENT RECEIPTS

The Fifth and Sixth Fee Applications at issue here are not isolated requests—they are part of a systematic pattern wherein the Receiver timed fee applications to coincide with settlement receipts, ensuring that settlement proceeds flowed in the shortest period to professional fees

rather than to alleged victims. The undisputed record demonstrates that the Receiver collected $3,720,000 in settlements while distributing $0.00 to alleged co-lenders.

## A. The Receiver Collected $3.72 Million and Distributed Nothing

Line 9 of every Summary of Financial Activity Report ("SFAR") filed in this case—"Disbursements to Investors"—shows $0.00. ROA.19333 at Line 9;. The following table sets forth the complete verified settlement receipts:

| Settlement | Order Date | Receipt Date | Amount |
|---|---|---|---|
| DLP Capital | Dec. 21, 2022 | Dec. 28, 2022 | $750,000 |
| HNGH (1st) | May 15, 2023 | May 18, 2023 | $500,000 |
| HNGH (2nd) | May 15, 2023 | May 21, 2024 | $500,000 |
| Somerset | May 24, 2024 | Jun. 25, 2024 | $210,000 |
| Dixon (BM318) | Aug. 14, 2024 | Aug. 19, 2024 | $100,000 |
| Lumar (BM318) | Aug. 14, 2024 | Aug. 21, 2024 | $75,000 |
| Tamamoi | Aug. 14, 2024 | Aug. 30, 2024 | $75,000 |
| HNGH (3rd) | May 15, 2023 | Nov. 26, 2024 | $750,000 |
| HNGH (4th) | May 15, 2023 | May 2025 | $750,000 |
| **TOTAL** | | | **$3,720,000** |
| **To Investors** | | | **$0.00** |

## B. Fee Applications Were Systematically Timed to Settlement Receipts

The same-day filing was not isolated. The record reveals a systematic pattern:

| Settlement | Receipt | Fee App Filed | Observation |
|---|---|---|---|
| DLP $750K | Dec. 28, 2022 | Feb. 14, 2023 (1st) | 48 days after settlement |
| HNGH Approved | May 15, 2023 | May 15, 2023 (2nd) | SAME DAY |
| Somerset $210K | Jun. 25, 2024 | Jul. 26, 2024 (3rd) | 31 days—3rd App renewed |
| HNGH 3rd $750K | Nov. 26, 2024 | Dec. 31, 2024 (4th) | 35 days—4th App filed |
| HNGH 4th $750K | May 2025 | Jul. 8, 2025 (5th/6th) | ~2 months—5th/6th filed |

The Fourth Fee Application is particularly revealing. It covers Q3 2023 work but was not filed until December 31, 2024—more than fifteen months later. The Receiver waited until the third HNGH installment of $750,000 was received (November 26, 2024) before filing. This delay was strategic: the Receiver accumulated fee claims until sufficient cash was available. The same pattern continues and the receiver has still not filed any fee application covering the period from April 2024 onwards even though more than 21 months have passed.

### C. Professional Fees Have Consumed the Estate

The cumulative effect is devastating:

| Category | Amount | Percentage |
|---|---|---|
| **Total Settlements Received** | **$3,720,000** | **100%** |
| Total Approved Fees (6 apps) | $2,852,381 | 76% |
| **Distributed to Investors** | **$0.00** | **0%** |

This Court has warned against "pecuniary" receiverships that enrich receivers at the expense of estates. Netsphere, Inc. v. Baron, 703 F.3d 296, 306 (5th Cir. 2012). When professional fees consume the estate while beneficiaries receive nothing, the receivership has failed its fundamental purpose. Here, the Receiver has extracted $2.85 million while distributing nothing to alleged victims. The Fifth and Sixth Fee Applications at issue—seeking additional $594,116.90—continue this pattern of self-enrichment at the estate's expense.

## IV. THE DISTRICT COURT ERRED BY APPROVING FEES FOR WORK THAT PRODUCED NO BENEFIT TO THE ESTATE

### A. The Receiver Pursued Sales Knowing They Could Not Close

The billing records reveal that a substantial portion of the Receiver's time—and thus the fees sought—was devoted to pursuing property sales that the Receiver knew could not be consummated. The Receiver's own Fifth Fee Application acknowledges: "the Receiver has been unable to

close on the sale of any of the real estate assets that are part of the Receivership." ROA. 19046.

The reason for this failure is not mysterious. Pending appeals of the receivership order create title clouds that prevent title companies from issuing policies. The Receiver has known this since at least the beginning of 2023. Yet the billing records show continued work on:

- Rock Creek property sale — multiple motions to ratify ROA. 13923-42, ROA. 13945-14000, ROA. 14001-14019.
- Frisco Gate property sale — motion for approval ROA. 14143-14161.
- Hall Street property — sale pursuit
- Amerigold Suites — sale pursuit
- Goldmark Hospitality — attempted disposition

The Receiver cannot claim ignorance. The Fifth Circuit's August 2023 decision vacating the receivership was known to all parties. The pending appeal of the second receivership order was known to all parties. The Receiver's own filings acknowledge that "the continued delay of the

Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually." ROA. 19046. While neglecting the fact that doing nothing is extensively increasing the value of assets, being in Texas which is the most rising price tagged as "Everything's bigger in Texas" real estate market.

A reasonable fiduciary would have recognized that pursuing sales during pending appeals was futile and would have minimized expenditures accordingly. Instead, the Receiver continued to bill extensively for work that could produce no benefit.

**B. Fees for Futile Work Constitute Waste**

Under *In re Imperial '400' Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970), waste is non-compensable. A receiver cannot bill an estate for activities that serve no legitimate purpose and produce no benefit.

In *SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992), the court emphasized that a receiver's primary duty is to "protect defrauded investors' interest in property" and to preserve and maximize asset value. Pursuing transactions known to be impossible does not protect investor interests—it depletes them.

In *SEC v. Small Business Capital Corp.*, 2013 WL 2146606 (N.D. Cal. 2013), the court scrutinized receiver fees and reduced compensation where work did not advance the interests of the estate. The court noted that receivers must exercise "good judgment" in determining what activities are worth pursuing.

Here, there was no good judgment. The Receiver knew sales could not close. The Receiver billed anyway. This is the definition of waste.

**C. The SEC Billing Instructions Require Cost-Benefit Analysis**

The SEC Billing Instructions establish a controlling standard: "Charges for litigation will be paid ONLY IF the litigation is reasonably likely to produce a NET ECONOMIC BENEFIT to the estate.[3]" This requirement extends logically to all receiver activities—work should be compensable only if it benefits the estate.

The Receiver cannot satisfy this standard for sale-related work. There was no net economic benefit. There was only cost—the cost of attorney time, the cost of negotiations, the cost of preparing motions—with no offsetting gain.

[3] *Id. at Section III (Litigation).*

The SEC's Instructions further require receivers to certify determinations about "likelihood of collection on any judgment" and to consider "alternative methods including contingency fee arrangements." These requirements reflect the principle that receivership resources should be conserved, not squandered on futile efforts.

**D. The Receiver's Admissions Confirm Zero Results**

The Receiver's own filings provide damning admissions about the lack of results: "the Receiver has been unable to close on the sale of any of the real estate assets that are part of the Receivership" ROA. 19046.

"the continued delay of the Receiver's proposed (and previously approved) sales continues to cost the Receivership between $2 million and $3 million annually" ROA. 19046. While neglecting the fact that doing nothing is extensively increasing the value of assets, being in Texas which is the most rising price tagged as “Everything’s bigger in Texas” real estate market

In the Receiver's Twelfth Quarterly Status Report, he concedes that tracing of funds from Chinese co-lenders and the forensic accounting is still ongoing. ROA. 19292. After more than two years and millions in fees,

the core investigative work mandated by this Court's *Barton* decision remains incomplete.

The Stanford receivership—the largest SEC receiver fee dispute—resulted in a 65% fee reduction in October 2025 when the court found that distributions to alleged victims were "less than half what has already been paid to the receiver's professionals.[4]" Here, the ratio is worse: alleged victims have received nothing, while professionals have received millions.

## V. THE RECEIVER'S FEE APPLICATIONS VIOLATE SEC BILLING INSTRUCTIONS AND FAIL THE LODESTAR TEST

### A. The Lodestar Analysis Requires Fee Reduction

Under the lodestar method, the district court calculates a fee amount "by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers," and makes various adjustments as appropriate. *Migis v. Pearle Vision, Inc.*, 135 F.3d

---

[4] *SEC v. Stanford International Bank, Ltd., N.D. Tex., October 2025 ruling reducing requested fees from $43 million to $14.9 million (65% reduction). The court found distributions to investors were "less than half what has already been paid to the receiver's professionals."*

1041, 1047 (5th Cir. 1998). The *Johnson* factors guide these adjustments, with results obtained being paramount.

Application of the lodestar method here compels substantial reduction:

**Results Obtained (Factor 8)**: Zero. No sales closed. No distributions made. No recovery for alleged victims. This factor alone justifies denial or substantial reduction. *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 261 (5th Cir. 2018) (affirming 60% reduction where attorneys failed to exercise "good judgment" relative to results achieved).

**Time and Labor Required (Factor 1)**: Impossible to assess. With 75-92% of entries redacted, the Court cannot determine whether the time claimed was reasonable or even what it was spent on.

**The Novelty and Difficulty of Questions (Factor 2)**: The Receiver's work involved routine real estate matters—property management, tax filings, sale negotiations—not complex legal questions requiring specialized expertise.

**The Skill Required (Factor 3)**: The Receiver and his team lack real estate development expertise. They are lawyers and accountants attempting to manage real estate assets, not specialists in the field.

**The Amount Involved and Results Obtained (Factors 7 & 8)**: The Receiver seeks nearly $600,000 for six months of work that produced nothing. As *SEC v. Goren*, 272 F. Supp. 2d 202, 210 (E.D.N.Y. 2003), observed: "the total number of hours expended strikes the Court as greatly out of proportion to the final results achieved."

### B. Block Billing Requires Fee Reduction

The Receiver's time records are predominantly "block billed"—multiple tasks lumped into single entries without itemization. This practice "impairs the required reasonableness evaluation." *Barrow v. Greenville Independent School District*, No. 3:00-CV-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005) (Fitzwater, J.).

Examples from the billing records include:

*"Confirm with assistant that case in Judge Hoffman's court is stayed and hearing set for tomorrow was cancelled; review 5th Circuit IOPs regarding emergency motions; call with the SEC regarding motion to intervene and dismiss; confer with C. Thomas regarding same; continue drafting and revising emergency motion to intervene and stay; confer with T. Wells;*

*email exchanges with Barton's counsel regarding emergency motion; call with 5th Circuit clerks to provide notice of same" — 4.4 hours — $1,694.00* This single entry combines at least eight discrete tasks with no indication of time spent on each. Without this information, the Court cannot assess reasonableness.

When presented with block-billed records, "many courts perform a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett v. Medical Protective Co.*, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (Fitzwater, J.). Given the pervasiveness of block billing here, reduction at the high end of this range is warranted.

**C. Clerical Work Is Not Compensable at Attorney Rates**

The fee records include numerous entries for clerical work billed at attorney rates. Clerical work is not separately reimbursable as attorney's fees. *Corman v. Lifecare Acquisitions Corp.*, 1998 WL 185517, at *2 (N.D. Tex. Apr. 10, 1998). Clerical work includes tasks such as "calendaring and scheduling," "reviewing local rules," "downloading and saving files," "printing and filing," "recording deadlines," and "obtaining court procedures." *Produce Pay*, 2021 WL 5155715, at *5.

Examples from the Receiver's billing include:

> "review mail" — billed multiple times at $80-$120 per occurrence
>
> "confer with assistant regarding preparation of appendix" — billed at attorney rate
>
> "confer with assistant regarding missing documents" — billed at attorney rate
>
> "Create spreadsheet for Rock Creek 2023 principal and interest payments" — $160.00
>
> "Review and organize bank productions and update master bank chart" — $176.00
>
> "Travel to 2999 Turtle Creek to meet auction movers and supervise moving of auction pieces" — $308.00

These tasks are administrative, not legal. They should not be compensated at attorney rates, if at all.

**D. The Accountants' Billing Reveals Systematic Problems**

Ahuja & Clark's billing records reveal additional problems that permeate the fee applications. In the Third Fee Application, Appellant identified a

$2,067.50 discrepancy between the stated invoice total ($116,303.00) and the sum of individual entries ($114,235.50). ROA. 17268.

The accountant billing includes 324 hours spent "reviewing QuickBooks files and documentation" at a cost of $67,280 to the estate. These records were properly maintained and required no "re-invention of the wheel." Yet the accountants billed as if they were forensic investigators uncovering hidden fraud, not reviewing organized digital records.

One employee, identified only as "VP," allegedly reviewed documentation and bank statements for 176 entities in a single month, while this number of entities never existed with bank records, dedicating 64.3 hours and billing $6,108.50. This work involved minimal substantive effort—digital documents likely required simple organization into folders—yet was billed at professional rates.

## VI. THE FEES SHOULD BE SHIFTED TO THE SEC AS THE PARTY THAT IMPROPERLY SOUGHT THE RECEIVERSHIP

### A. This Court Vacated the Receivership for Abuse of Discretion

On August 31, 2023, this Court vacated the receivership order, finding the District Court abused its discretion. *SEC v. Barton*, 2023 WL 4060191 (5th Cir. 2023). This Court held that the District Court failed to apply

*Netsphere* standards and improperly included entities without determining their connection to the alleged fraud.

The vacatur was not a minor procedural correction. This Court found that "the district court abused its discretion by including all Barton-controlled entities in the receivership without first determining which were connected to the alleged fraud." *Id.* at *4. This was a fundamental error in the receivership's foundation.

**B. Longstanding Precedent Supports Fee Shifting**

When a receiver's appointment is found to be irregular or unauthorized, the expenses should be borne by the party seeking the appointment, not the receivership estate. This principle has deep roots in federal jurisprudence.

*Bowersock Mills & Power Co. v. Joyce*, 101 F.2d 1000, 1002 (8th Cir. 1939) held that where a receiver is "irregularly appointed," the costs should fall on the party that procured the improper appointment.

*Porter v. Cooke*, 127 F.2d 853, 859 (5th Cir. 1942), this Court recognized that receivership expenses may be charged to the party that sought the receivership when the appointment was improper.

*W.F. Potts Son & Co. v. Cochrane*, 59 F.2d 375, 378 (5th Cir. 1932), held that the district court's primary obligation is to protect estate assets from unauthorized expenses.

*Beach v. Macon Grocery Co.*, 125 F. 513, 517 (5th Cir. 1903), established that courts have discretion to assess receivership costs against the party that procured an improper appointment.

**C. Statutory Authority Supports Fee Shifting**

*28 U.S.C. § 3103* provides: "If, at the termination of a receivership, there are no funds in the hands of a receiver, the court may fix the compensation of the receiver in accordance with the services rendered and may direct the party who moved for the appointment of the receiver to pay such compensation."

Here, the SEC moved for the Receiver's appointment. This Court found that appointment was improper. The statute authorizes directing the SEC to pay the Receiver's compensation rather than depleting estate assets that should be preserved for alleged victims.

### D. The SEC Should Bear the Costs of Its Improper Request

The SEC sought the receivership. The SEC obtained the receivership. This Court found the receivership was improperly granted. The logical consequence is that the SEC—not the Defendant, not the alleged victims, not the estate—should bear the costs.

This is not punitive; it is equitable. The SEC had the responsibility to ensure that its receivership request complied with *Netsphere* standards. It failed. The SEC could have sought a more limited remedy. It did not. The SEC could have identified which entities were actually connected to the alleged fraud. It did not bother.

Now the SEC stands by while the Receiver extracts millions from an estate that should be preserved for alleged victims. The SEC files no objections to fee applications. The SEC offers no protection to the estate it sought to control. The SEC should not be permitted to escape financial responsibility for the consequences of its overreaching.

## CONCLUSION & RELIEF SOUGHT

The District Court's approval of $594,116.90 in receiver fees constitutes an abuse of discretion that should be reversed. The fee applications are fundamentally defective in six independent respects:

**First**, billing records redacted at rates of 75.5% to 91.9% prevent any meaningful judicial review and violate SEC Billing Instructions.

**Second,** the fee applications are part of a systematic pattern of fee extraction timed to settlement receipts, with $3,720,000 collected and $0.00 distributed to investors.

**Third**, fees for sale-related work known to be futile constitute waste and are not compensable.

**Fourth**, the fee applications fail the lodestar test because results obtained—the most critical factor—is zero after more than two years and millions in fees.

**Fifth**, this Court vacated the receivership as improperly granted, and fees should be shifted to the SEC as the party that sought the improper appointment.

**Sixth,** the SEC failed to vet these fee applications as required and should bear any approved fees. Appellant respectfully requests that this Court:

1. **REVERSE** the District Court's Order Granting Receiver's Fifth and Sixth Quarterly Fee Applications ROA. 19350-51.

2. **REMAND** with instructions to deny the fee applications or, alternatively, to conduct a proper lodestar analysis with unredacted billing records;

3. **ORDER** that any fees ultimately approved be paid by the SEC, not the receivership estate; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: January 15, 2026

*/s/ Timothy L. Barton*
**Timothy L. Barton**
*Pro Se Appellant*
1846 E Rosemeade Pkwy, #232
Carrollton, TX 75007
Tel: (214) 673-8714
Timothy.Barton@proton.me

## CERTIFICATE OF SERVICE

I hereby certify that on 15th day of January, 2026, I electronically filed the foregoing Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Timothy L. Barton*
**Timothy L. Barton**
*Pro Se Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,289 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: January 15, 2026

*/s/ Timothy L. Barton*
**Timothy L. Barton**
*Pro Se Appellant*